**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| **PRESIDENTIAL DETAILING LLC** ) | Case #16-10447-BFK |
| ) | (Chapter 11) |
| Debtor-In-Possession. ) | |
| ) | |

## MOTION FOR USE OF CASH COLLATERAL

Debtor and Debtor-In-Possession Presidential Detailing LLC (the "Debtor"), by counsel, hereby requests, pursuant to 11 U.S.C. § 363(c)(2)-(4) and F.R.Bankr.P. 4001(b), that this Court authorize it to use its accounts receivable, as they existed on the bankruptcy filing date, in the ordinary course of its business including, on an interim basis until a final hearing can be scheduled on this Motion upon 14 days' notice to its creditors, the use of that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate. In support of this Motion, the Debtor submits the following, which it relies upon as the required memorandum of points and authorities:

1. The Debtor is in the business of providing vehicle washing and detailing services as a contractor to various auto dealerships in the Washington, DC metropolitan area. The company has been continuously in business since it was founded in January 2007 by its CEO and 100% member Kevin Rohalmin. Currently the company provides services to approximately 13 dealerships, where its employees work on-site to wash and detail vehicles belonging to the

---

**Steven B. Ramsdell, VA Bar #33222**
      **Counsel to the Debtor**
Tyler, Bartl, Ramsdell & Counts, P.L.C.
300 N. Washington St., Suite 202
Alexandria, VA 22314
(703) 549-5003

dealerships' customers. In 2015, the company had revenues of $4.2 million, its highest revenues ever.

2. In May 2015, the Debtor became aware that it was the subject of a lawsuit by approximately six of its former employees, alleging that they had not been paid the required wages and overtime premiums required under the Fair Labor Standards Act ("FLSA"). That case was ultimately settled in August 2015. In October 2015, the same attorney filed a new lawsuit on behalf of 18 additional former employees of the Debtor raising similar allegations. In January 2016, the parties agreed to a consent judgment in the amount of $187,419.84, which remains unpaid.

3. The costs of defending the above-referenced litigation disrupted the Debtor's normal cash flow, causing it to resort to loans from several receivables finance companies. Specifically, the Debtor entered into a Secured Promissory Note dated August 20, 2015 with Small Business Term Loans, Inc., pursuant to which it owes approximately $214,301; a Future Receivables Sale Agreement dated September 14, 2015 with Knight Capital Funding, pursuant to which it owes approximately $182,363.36; and a Merchant Agreement dated October 8, 2015 with Global Merchant Cash, Inc., pursuant to which it owes approximately $116,458.52 (together the "Receivables Lenders"). The claims of the Receivables Lenders purport to be secured by the Debtor's accounts receivable, but the Debtor does not have any evidence that these security interests have been perfected under applicable non-bankruptcy law.

4. In order to stay collection actions by the FLSA plaintiffs and the Receivables Lenders that were ongoing and threatened the viability of its business, the Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on February 9, 2016, and it continues to operate its business as a Debtor-In-Possession. The Debtor is a "small business

debtor" and this is a "small business case," as defined in 11 U.S.C. § 101(51C) & (51D).  No creditors' committee has been appointed in this case.

  5. As of the commencement of this case, the Debtor had outstanding accounts receivable of $119,117.78.  Exh. 1.  Its operating account at Citibank, N.A. was overdrawn as of that date as a result of a prepetition levy that had been served by Global Merchant Cash, Inc.

  6. The receivables that the Debtor generates on account of work performed after the filing of this case (the "Postpetition Receivables") are not subject to the Receivables Lenders' security interests.  11 U.S.C. § 552(a).  However, the Debtor cannot wait for the collection of its Postpetition Receivables in order to fund its ongoing business operations; in the interim, the Debtor requires the use of its accounts receivable in order to pay its employees' wages, rent, utilities, and other routine business expenses and otherwise to operate in the ordinary course of its business.  The Debtor is therefore requesting the Court's authority to pay its postpetition expenses incurred in the ordinary course of business out of the existing accounts receivable.

  7. In order to adequately protect the value of the Receivables Lenders' security interests in their prepetition cash collateral, the Debtor proposes: (a) that it will use such cash collateral solely in the ordinary course of its business for such purposes as payroll, rent, and such other expenses as are necessary to avoid immediate and irreparable harm to the estate pending a final hearing on this Motion upon 14 days' notice to its creditors; (b) that the Receivables Lenders be granted replacement liens, in the same priority in relation to each other as they enjoyed against the prepetition receivables, on the Debtor's Postpetition Receivables and bank deposits to the extent, dollar for dollar, that the Debtor utilizes the prepetition accounts receivable.  The Debtor represents that it will have adequate Postpetition Receivables in amount and quality to protect the value of the Receivables Lenders' security interests in prepetition cash collateral; and (c) that the

Debtor account to the Court for its expenditures in the ordinary course of its business during this case. Attached hereto as Exhibit 2 is an emergency operating budget that sets forth those minimum expenses that the Debtor must pay between now and April 2, 2016 in order to avoid immediate and irreparable harm to the estate and that reflects that the Debtor will generate sufficient Postpetition Receivables to offset the prepetition receivables that it intends to spend on such expenses.

      8. The use of cash collateral on the terms set forth herein is imperative both to the Debtor's business viability and to preserving the quality and collectibility of the Receivables Lenders' prepetition receivables collateral.

      WHEREFORE, the Debtor requests that this Court grant this Motion; authorize the Debtor, on the conditions set forth herein, to use the Receivables Lenders' cash collateral in the ordinary course of its business including, on an interim basis until a final hearing can be scheduled on this Motion upon 14 days' notice to its creditors, the use of that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate; and grant such other and further relief as this Court deems just and appropriate.

PRESIDENTIAL DETAILING LLC
By counsel


 /s/Steven B. Ramsdell
Steven B. Ramsdell, VA Bar #33222
Tyler, Bartl, Ramsdell & Counts, P.L.C.
300 N. Washington St., Suite 202
Alexandria, VA 22314
(703) 549-5003

## CERTIFICATE OF SERVICE

      I hereby certify that on this 19th day of February, 2016, a true copy of the foregoing Motion, together with the proposed Order, was served by first-class mail, postage prepaid, on the Debtor's secured creditors, the creditors included on the list of 20 largest unsecured claims, and other parties in interest, all as set forth on the list attached to the original of this Motion that has been filed with the Court and by facsimile as follows:

Global Merchant Cash, Inc.
c/o Marcella G. Rabinovich, Esq.
Facsimile (212) 804-7013

Global Merchant Cash, Inc.
c/o Kearns Brinen Monaghan, Inc.
Facsimile (302) 734-5269

Knight Capital Funding
Facsimile (866) 293-8143

Small Business Term Loans, Inc.
c/o Advance Funds Network
Attn: Jeffrey Schwartz
Facsimile (888) 645-6395

                                                                                   /s/Steven B. Ramsdell
                                                                                    Steven B. Ramsdell